**RECEIVED**

JAN 2 4 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| N.S., in her capacity as natural tutrix and on behalf of her minor children R.G. and N.G. | CIVIL ACTION NO. 09-0779 |
| -vs- | JUDGE DRELL |
| CITY OF ALEXANDRIA, et al. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court are the Motions for Summary Judgment filed by Defendants Officer Clifton Fairbanks, the City of Alexandria, and former Chief of the Alexandria Police Department Darren Coutee. (Docs. 77, 79). Also before the Court is a Motion to Strike filed by Defendants regarding the expert testimony of Dr. Charles Kelly. (Doc. 86). All responses have been filed, and these matters are ready for disposition. For the following reasons, the Motions for Summary Judgment and the Motion to Strike will be GRANTED IN PART AND DENIED IN PART as set forth in detail below.

I. **Background**

On May 12, 2009, Nikki McCoy Small, as natural tutrix for her minor children, R.G. and K.G., filed a Complaint on their behalf to recover damages for the death of the children's father, Richard Goss. The Complaint alleges violations of the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983. (Doc.

1

1). It also makes claims under the Louisiana State Constitution, Article I §§ 2 and 5. (Doc.

1). Finally, there are allegations under general tort law principles from La. Civ. Code

Articles 2315 and 2320, and "common law" tort principles adopted by Louisiana courts.

(Doc. 1).[1]

Before his death on November 26, 2008, Goss was drinking hard grain alcohol in

a room at the Greenbrier Motel in Rapides Parish. (Docs. 1; 76-10). He was accompanied

by a female, Darnell Willis, who called Acadian Ambulance Service when Goss became

so intoxicated that she "couldn't do nothing with him anymore." (Docs. 76-8; 76-10). The

call notes reflect Goss was not trying to hurt himself or anyone else at the time of the

requested ambulance dispatch. (Doc. 76-10).

Based on protocol, the ambulance service called for police backup. Id. Police

Officer Clifton Fairbanks, a corporal and patrol officer with the Alexandria Police

Department, heard a call on the dispatch radio during his lunch break requesting an

officer to meet Acadian Ambulance at the Greenbrier Motel, which was in his patrol

zone, to assist with a suicidal subject. (Doc. 76-8). When Fairbanks arrived at the

Greenbrier, he encountered Willis walking quickly away from Room 16 where Goss was

located. Fairbanks initiated a conversation with Willis as the two passed one another;

---

[1] Notably, Louisiana is a civil law state. The common law principles of stare decisis are not
applicable here. Louisiana courts may have looked to certain common law principles for
guidance, but in all cases must have a statutory basis in developing those opinions. In the
Louisiana Civil Code, the statutory basis for tort law is found in arts. 2315-2324.2.

Willis told him she was not the reason for the ambulance call, and that Goss was "tripping and drinking." Id.[2]

Fairbanks continued to Room 16 with Acadian Ambulance employee Russell Boney following him. (Doc. 76-10). Fairbanks entered the unlit room and remained in the threshold, between four and twelve feet from Goss, during the entire incident. (Docs. 76-8; 76-10). Initially, Boney was also in the room with Goss and Fairbanks. Id.[3] Goss, who was on the bed, was partially clothed and rambling. Id. Fairbanks remembers Goss's making statements such as "stay alert," "stay alive," "big man, huh?" "Double Chevron man," "I got mine right here," and "watch your situational awareness." (Doc. 76-8). Boney remembers hearing Goss make a statement about "why you always have to be aware of your surroundings," but was otherwise unable to understand Goss. (Doc. 76-10).

During the conversation between Fairbanks and Goss, Goss began to move to his right; toward the left front of the bed near the headboard. (Docs. 76-8; 76-10). This movement occurred as Boney exited the room to speak with Willis in the parking lot because he wanted more information about Goss's condition. (Doc. 76-10). Fairbanks did not want to take his eyes off of Goss or leave the room because he did not know what was in the room or whether the room was safe. (Doc. 76-8).

---

[2] By contrast, Russell Boney, one of the Acadian Ambulance Service employees at the Greenbrier Motel on November 26, 2008, recalls Fairbanks speaking with Willis after knocking on the door of Room 16. (Doc. 76-10).

[3] Another Acadian Ambulance employee, Joshua Tam, may have been in Room 16 as well. Nothing in the record indicates his exact location during these events and there are no statements from him in the record.

Sometime during the interaction between Fairbanks and Goss, Fairbanks asked Willis if Goss had a weapon. (Doc. 76-8). Fairbanks did not hear an answer from Willis, but did hear Goss respond "yeah I've got mine right here." (Doc. 76-8). Fairbanks saw Goss reach with his right hand to his right in a downward motion toward the area between the mattress and the boxspring. (Doc. 76-8).[4] Fairbanks drew his weapon, and commanded Goss to put his hands up at least four times. (Docs. 76-8; 76-10). Boney, who had returned to the outside of Room 16, saw Fairbanks's arms extended into the room and heard the commands. (Doc. 76-10). Fairbanks fired three times, twice in quick succession and then a third time after a slight pause. (Docs. 76-8; 76-9). There is conflicting testimony about whether Fairbanks moved for cover between the second and the third shots. (Docs. 76-9; 76-10). According to Boney, Goss was not breathing and did not have a pulse within twenty to thirty seconds of being removed from the room. (Doc. 76-10).

Fairbanks had no formal training in suicide prevention. (Docs. 76-8; 76-11). According to uncontested record filings, Fairbanks's police training met or exceeded all Louisiana Peace Officers Standards and Training (POST)[5] requirements. (Doc. 76-7).

Defendants claim Plaintiff agreed to dismiss the claims made against Coutee. (Doc. 85). However, to date there has been no record filing of a pleading seeking to

---

[4]  Goss's right side would be on Fairbanks's and Boney's left, and would be the side facing the door of Room 16. (Doc. 76-8, at Ex. 2).

[5]  POST certification indicates the completion of mandatory basic training for municipal officers, deputy sheriffs, state police, and all persons commissioned as peace officers.

dismiss those claims.  Therefore, the following will analyze Plaintiff's claims against Fairbanks, Coutee, and the City of Alexandria.

## II.   Law and Analysis

### A. Motion for Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although Rule 56 was amended effective December 1, 2010, "the amended rule contains no substantive change to the standard." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680, n.8 (5th Cir. 2011). An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

### B. Fourth Amendment Excessive Force Claim Against Fairbanks

Plaintiff alleges Fairbanks, in his official and individual capacities, used excessive force when he shot Goss. Excessive force claims are analyzed under the Fourth Amendment reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989). "An officer's use of deadly force is not excessive, and thus no constitutional violation occurs,

when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009).

In Graham, the United States Supreme Court listed factors to help determine whether a police officer's use of force was reasonable under the Fourth Amendment.

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
>
> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises. With respect to a claim of excessive force, the same standard of reasonableness at the moment applies[.] Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (internal citations and quotations omitted).

"To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Tarver v. City of Edna, 410

6

F.3d 745, 751 (5th Cir. 2005). Excessive force claims are fact-intensive, and a final determination of whether force was excessive depends on the facts and circumstances of each case. Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009).

The United States Fifth Circuit "has found an officer's use of deadly force to be reasonable when a suspect moves out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon." Manis, 585 F.3d at 844. In Reese v. Anderson, 926 F.2d 494 (5th Cir. 1991), the Fifth Circuit reversed a denial of summary judgment and found as a matter of law that shooting a suspect was reasonable when the officer repeatedly warned the suspect to raise his hands and the suspect ignored the warnings and continued to reach downward toward the floor of his vehicle in defiance of the officer's orders. Id. at 500-01. In Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379 (5th Cir. 2009), the Fifth Circuit affirmed a grant of summary judgment when an officer, who was the only witness, shot and killed a suspect after ordering him to show his hands. Id. at 381, 383. Similarly, in Manis, the Fifth Circuit granted summary judgment in favor of a police officer who shot and killed a suspect because the suspect ignored commands to show his hands and continuously reached underneath the front seat of his vehicle. 585 F.3d at 842. In all three cases, the court found as a matter of law that the police officers could reasonably believe the suspects' actions posed a risk of serious harm to officers or others at the scene.

The facts in the present case are similar to the facts in Reese, Ontiveros, and Manis because Fairbanks repeatedly warned Goss to show his hands and Goss failed

to comply. (Docs. 76-8; 76-10). When Goss continued to "reach with his right hand to the right side of that bed to his right in a downward motion," coupled with his verbal rambling that implied threats to safety, it was reasonable for Fairbanks to believe these actions were to acquire a weapon. (Doc. 76-8). Fairbanks could not see any object for which Goss might be reaching, and the officer could not get Goss to obey his commands. (Docs. 76-8; 76-10).

Plaintiff asserts no facts contradicting Fairbanks's statement regarding Goss's actions prior to the shooting. Plaintiff argues there is a factual dispute about the events before Fairbanks interacted with Goss when Fairbanks and Willis made initial contact in the Greenbrier parking lot. (Docs. 76-8; 76-10).[6] However, Plaintiff does not provide any evidence to create a genuine dispute about whether Goss made military and weapon-related statements or about whether Goss refused to follow Fairbanks's commands to show his hands when he was reaching into an area outside of Fairbanks's line of sight. (Docs. 76-8; 76-10). Goss's undisputed failure to follow the officer's commands, together with decedent's particular statements, were sufficient to create a fear of imminent and serious physical harm. Therefore Fairbanks's actions were reasonable under the circumstances and objectively reasonable under clearly established law, such that we will grant summary judgment on this claim in his favor. (Doc. 76-8).

---

[6] According to Plaintiff, there is a factual dispute about the procedural appropriateness of Fairbanks's actions when he arrived at the Greenbrier and spoke to Willis in passing as he walked towards Goss's room. (Doc. 76-8).

### C. § 1983 Claims Against Coutee

Plaintiff alleges Coutee is liable in his official and individual capacities for the improper and inadequate training of Fairbanks and inadequate supervision of Fairbanks under 42 U.S.C. § 1983. (Doc. 1).

> For a police chief to be held liable under § 1983 there must be some connection between the chief's action and the alleged constitutional violation. The plaintiff must show that: (1) the police chief failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference.

Baker v. Putnal, 75 F.3d 190, 199 (5th Cir. 1996) (internal citations omitted). "A plaintiff seeking recovery under a failure to train or supervise rationale must prove that the police chief failed to control an officer's known propensity for the improper use of force." Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005) (internal quotations omitted).

There is no indication in the record that Coutee failed to supervise or train Fairbanks. Coutee was not responsible for Fairbanks's training; rather, the Alexandria Police Department Training Academy was responsible for his training. (Doc. 77-6). In addition, nothing in the record shows Fairbanks had a known propensity for the improper use of force. Therefore, summary judgment will be granted for the claims of inadequate supervision and training against Coutee in his official and personal capacities.

### D. § 1983 Claims Against the City of Alexandria

Plaintiff also asserts a claim against the City of Alexandria for inadequate police training. "[T]here are limited circumstances in which an allegation of failure to

9

train can be the basis for liability under § 1983." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 387 (1989). Plaintiff's claims against the City for inadequate police training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>Id.</u> at 388. Municipal liability only exists "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." <u>Monell v. Dept. of Soc. Services of New York</u>, 436 U.S. 658, 694 (1978). The alleged failure to train must be closely related to the ultimate injury. <u>City of Canton</u>, 489 U.S. at 385. In order to prevail in a claim for inadequate training, a plaintiff must demonstrate specific inadequacies with the training program. <u>Id.</u> at 390. Once inadequacies are shown, "the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" <u>Id.</u>

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. <u>Id.</u>

Negligent training does not, on its own, give rise to a § 1983 claim against a municipality. <u>Id.</u> at 391. It is also insufficient to show "injury or accident could have been avoided if an officer had had better or more training." <u>Id.</u> "[F]or liability to attach . . . the identified deficiency in a city's training program must be closely related to the ultimate injury." <u>Id.</u> Federal courts will not second-guess municipal employee training programs and will only find municipalities liable when a failure to train reflects a deliberate or conscious municipal choice. <u>Id.</u> at 392.

Fairbanks is POST certified, and his training fully complies with the State of Louisiana's requirements for police officers. (Doc. 76-11). Plaintiff does not provide a single fact showing the City's policies or procedures for training police officers were inadequate. Therefore, we will grant summary judgment in favor of the City on the claim of inadequate training.

### E. Punitive Damages

Plaintiff claims punitive damages from Defendants Fairbanks and Coutee to the extent each is sued in his individual capacity. Under § 1983, punitive damages are discretionary and "may be awarded only if the official conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." Sockwell v. Phelps, 20 F.3d 187, 192 (5th Cir. 1994) (internal quotations omitted). Plaintiff shows no facts demonstrating evil intent or reckless or callous indifference to Goss. The facts presented to this Court show Fairbanks acted in an objectively reasonable manner under the circumstances in the record. Therefore, summary judgment will be granted to preclude all claims for punitive damages against Fairbanks and Coutee.

### F. Louisiana Use of Force (State Law Claim)

Plaintiff alleges Fairbanks used excessive force on Goss as defined under Louisiana state law. Louisiana courts evaluate use of force with the duty/risk analysis applicable to negligence claims. Mathieu v. Imperial Toy Corp, 646 So.2d 318, 321-22 (La. 1994). The duty/risk analysis consists of the following factors:

    I. Did the defendant owe a duty to the plaintiff?
    II. Was the duty breached?

III. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?
IV. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
V. Actual damage

See Williams v. Domino's Pizza, Inc., 2001 WL 6724, at * 4 (E.D. La. Jan. 2, 2001);

Roberts v. Benoit, 605 So. 2d 1032, 1041 (La. 1991); see also Wiltz v. Bayer

CropScience, Ltd. P'ship, 645 F.3d 690, 698 (5th Cir. 2011). In order for liability to exist,

Plaintiff must prove all five separate factors. Mathieu, 646 So.2d at 322.

      1. *Duty*

    First, we consider whether Fairbanks owed a duty to Goss. "Whether a duty is

owed is a question of law." Hardy v. Bowie, 744 So.2d 606, 614 (La. 1999). Duties are

imposed on governmental actors, such as police officers, based on the services

performed or provided to the public. See Smith v. Lafayette Parish Sheriff's Dept., 874

So.2d 863, 869 (La. App. 3d Cir. 2004).

> A police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his actions. His authority must at all times be exercised in a reasonable fashion and he must act as a reasonably prudent man under the circumstances.

Justin v. City of New Orleans Through Morial, 499 So.2d 629, 631 (La. App. 4th Cir.

1986). Based on the broad duty imposed as a matter of law on police officers towards

all citizens, we conclude Fairbanks had a duty to act reasonably to investigate Goss's

situation and to protect others who could have been harmed by Goss.

      2. *Breach of Duty*

    The next inquiry is whether Fairbanks breached the duty when he shot Goss.

The breach factor of the duty/risk analysis considers the reasonableness of the action

taken. <u>Westmoreland v. City of Natchitoches</u>, 771 So.2d 715, 717 (La. App. 3d Cir.

2000). Reasonableness is determined by examining the totality of the circumstances.

<u>Kyle v. City of New Orleans</u>, 353 So. 2d 969, 973 (La. 1977).

> A court must evaluate the officers' actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers.

<u>Id.</u> at 973.

> <u>Kyle</u> lists several elements which courts are free to consider when evaluating

the totality of the circumstances to determine whether a police officer used

reasonable force. These elements are:

> the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment.

<u>Kyle</u>, 353 So.2d at 973; <u>see also</u> <u>Deville</u>, 567 F.3d at 172-73.

> Considering the totality of the circumstances, we find Fairbanks was

reasonable given the unpredictable and rapidly evolving situation with Goss. A

consideration of the <u>Kyle</u> elements supports this finding. Goss's exhibited persona

was that of a highly intoxicated and suicidal man. (Docs. 76-8; 76-10). The risks and

dangers faced by Fairbanks were significant because he was dealing with an

inebriated person who made multiple military-related and weapon-related

statements. (Doc. 76-8). Finally, Goss refused to obey Fairbanks's multiple commands

to show his hands and to stop reaching downward. (Docs. 76-8; 76-10). Given the

undisputed uncertain circumstances confronting Fairbanks apparently created by

13

Goss's actions, Fairbanks behaved reasonably to protect himself and those around him.

### 3. *Remaining Elements of the Duty/Risk Analysis*

Because Fairbanks did not breach his duty to Goss, we need not consider the remaining three factors of the duty/risk analysis. Therefore, we will also grant Defendants' motion for summary judgment as to the state law excessive force claim.

## G. Vicarious Liability (State Law Claim)

Plaintiff alleges Coutee is vicariously liable for Fairbanks's tortious acts and omissions toward Goss. Plaintiff also contends the City is vicariously liable for Fairbanks's and Coutee's tortious acts and omissions.  Under § 1983, supervisory officials and municipalities cannot be held liable on any theory of vicarious liability for the actions of subordinates. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 122 (1992); Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). Therefore, Plaintiff cannot assert any claims against Coutee or the City for vicarious liability based on alleged acts or omissions under § 1983.

However, there may be a cognizable state law claim against Fairbanks and Coutee to allow for the maintenance of a vicarious liability action.

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
>
> * * *
>
> In the above case[], responsibility only attaches, when the masters or employers . . . might have prevented the act which caused the damage, and have not done it.

La. Civ. Code art. 2320. Similarly, "the employer of a police officer is liable for wrongful injury inflicted while performing his official duties." Bourque v. Lohr, 248 So.

14

2d 901, 904 (La. App. 3d Cir. 1971); see also Thomas v. Frederick, 766 F. Supp. 540, 559 (W.D. La. 1991).

In order to have a claim for vicarious liability against an employer under Louisiana law, there must be a claim against a culpable employee. Here, we cannot say as a matter of law there is no cognizable state law claim against Fairbanks, because the state law constitutional and false arrest claims were not addressed in Defendants' summary judgment motions. We have a hard time seeing how this case will have anything to do with false arrest, but we will not dismiss this case until all claims and issues have been briefed in full. Therefore, for the present time, we will deny summary judgment on the vicarious liability claims until the remaining state law claims are briefed in full by both parties.

### H. Intentional Infliction of Emotional Distress (State Law Claim)

Plaintiff claims Fairbanks acted intentionally to inflict emotional distress when he shot and killed Goss. (Doc. 1). In an abundance of caution, Defendants also discuss this claim as relating to Coutee. (Doc. 77-4). "One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).

> [I]n order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

15

Id. "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.; see also Deus v. Allstate Ins. Co., 15 F.3d 506, 514 (5th Cir. 1994).

There is nothing in the record showing the conduct of Fairbanks or Coutee was extreme or outrageous. Above, we found Fairbanks was objectively reasonable when he shot Goss based on Goss's statements and failure to comply with the commands. (Docs. 76-8; 76-10). In addition, there are no facts showing Coutee acted in an extreme or outrageous manner at any time during any events relating to this matter. Therefore, we will also grant summary judgment in favor of Defendants on this issue.

## I. Punitive Damages (State Law Claim)

Defendant discusses Plaintiff's punitive damages claims in the pending motions. (Docs. 77; 79). Louisiana has a strong public policy against punitive damages and does not award punitive damages unless expressly authorized by statute. Ross v. Conoco, Inc., 828 So. 2d 546, 555 (La. 2002). Here, no punitive damages are authorized by any state law relating to the present causes of action. Therefore summary judgment will be granted in favor of Defendants on this issue.

## J. Assault and Battery (State Law Claims)

Plaintiff claims Fairbanks committed assault and battery on Goss. (Doc. 1). "A battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such contact[.]" Landry v. Bellanger, 851 So.2d 943, 949 (La. 2003) (internal citations and quotations omitted). Assault is "a combination of threats, present ability to carry out the threats, and reasonable apprehension of

harmful or offensive contact." <u>Groff v. Southwest Beverage Co., Inc.</u>, 997 So.2d 782, 787 (La. App. 3d Cir. 2008).

Law enforcement officers occasionally have to use force to apprehend or arrest an individual. The law allows police officers to use force when it is necessary to make an arrest. <u>Kyle</u>, 353 So.2d at 972.

As set forth above, we find Fairbanks acted reasonably when he shot Goss secondary to Goss's undisputed statements about having a weapon and his failure to comply with police orders to show his hands. (Docs. 76-8; 76-10). Fairbanks did nothing more than attempt to control Goss's person following suspicious and threatening behavior. When Goss refused to comply with Fairbanks's orders, Fairbanks acted to prevent Goss from potentially harming himself and those at the scene. Therefore, we will grant summary judgment in favor of Defendants on the claims for assault and battery.

### K. General Negligence and Fault (State Law Claims)

In addition to the allegations outlined previously, Plaintiff also generally asserts Fairbanks was negligent when he shot and killed Goss. (Doc. 1). Plaintiff also contends Coutee was negligent in supervising Fairbanks under state law and asserts general negligence claims against Coutee. (Doc. 1). As we have already addressed in detail, Louisiana applies a duty-risk analysis to negligence claims.

Our determination that Fairbanks was reasonable when he shot Goss negates any potential negligence claim against the officer, because he did not breach his duty of care. Since Plaintiff cannot prove the breach of duty element of the duty/risk

analysis, summary judgment will be granted for all claims of negligence asserted against Fairbanks.

As for Coutee, Plaintiff provides no facts showing negligent supervision. Coutee was not present at the Greenbrier on the day of the shooting and was not responsible for training Alexandria police officers. (Doc. 77-4). There is nothing in the record to suggest the slightest inference of negligent supervision or unreasonable behavior from Coutee. Therefore, summary judgment on the issues of negligent supervision and general negligence will be granted in favor of Coutee.

### L. Obstruction of Justice and Civil Conspiracy

In a footnote, Defendants acknowledge Plaintiff's claims of obstruction and civil conspiracy against Coutee. (Doc. 77-4). Other than three unsupported sentences, Defendants do not provide the Court with any additional basis for dismissing these claims.

Plaintiff alleges Coutee obstructed justice and misrepresented facts regarding the nature of the investigation and the identity of the investigative body. Contrary to Plaintiff's assertion, there is no evidence in the record showing Coutee obstructed justice. Therefore, summary judgment will be granted in favor of Defendants on this issue secondary to the lack of any factual basis for the claim.

The United States Fifth Circuit recognizes a cause of action for civil conspiracy under § 1983. In order to prove a civil conspiracy, Plaintiff must show "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by defendants with the specific intent to violate the aforementioned right." Paternostro v. Crescent City Connection Police Dept., 2002 WL 34476319, at *14 (E.D. La. Apr. 2,

2002). Plaintiff fails to provide any evidence showing a violation of a constitutional right or of actions taken by Defendants with the specific intent of violating a constitutional right. Therefore we will also grant summary judgment in favor of Defendant Coutee on this issue.

In light of the rulings rendered herein, issues about discretionary act immunity under La. R. S. 9:2798.1 do not need to be discussed.

### M. Motion to Strike

Defendants also move to strike the report and opinions of Plaintiff's expert Dr. Charles Kelly. (Doc. 86). Dr. Kelly is described as an expert in police policy and procedures. (Doc. 86-1).

#### 1. *Legal Standard for Expert Testimony*

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 592-93 (1993), trial courts are to act as "gatekeepers," making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in

19

issue." The gatekeeping function is meant to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but [also] reliable." Id. at 589.

The party offering expert testimony is not obligated to prove the testimony is correct. Rather, the party bears the burden of establishing "by a preponderance of the evidence that the testimony is reliable." Moore v. Ashland Chem., Inc., 151 F.3d 269, 276 (5th Cir. 1998). In analyzing reliability, the trial court must assess whether the reasoning or methodology supporting the expert's testimony is valid. The point is to exclude expert testimony that is based solely on subjective belief or unsupported speculation. See Daubert, 509 U.S. at 590. "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702." Munoz v. Orr, 200 F.3d 291, 301 (5th Cir. 2000).

### 2. *Admissibility of Dr. Kelly's Report and Opinions*

As to the admissibility of Dr. Kelly's report, there is nothing in the record for this Court to strike, because neither party submitted the report at issue. Therefore, the motion to strike pertaining to Dr. Kelly's report will be denied as unripe.

Dr. Kelly's opinions, as expressed in his deposition, are inadmissible based on authority from the United States Fifth Circuit excluding expert testimony in a § 1983 case consisting of nothing more than "credentials and a subjective opinion." Benavides v. County of Wilson, 955 F.2d 968, 974 (5th Cir. 1992). Dr. Kelly provides simply his credentials and his subjective opinion that he would have acted differently than Fairbanks based on the facts presented. (Doc. 90-1). Under the Fourth Amendment, an opinion that one would have acted differently does not negate the

officer's reasonableness at the time of the act. See United States v. Sokolow, 490 U.S. 1, 11 (1989); United States v. Sharpe, 470 U.S. 675, 686-87 (1985); Illinois v. Lafayette, 462 U.S. 640, 647 (1983). Therefore, Dr. Kelly's opinions about alternative methods he believes Fairbanks should have used are irrelevant and inadmissible.

Dr. Kelly's opinions are also inadmissible to the extent they contain legal conclusions or factual findings. Expert opinions cannot unduly infringe on the fact-finding functions of the jury, and are inadmissible to the extent that such opinions assert factual findings. Brown v. Strain, 2010 WL 3523026 (E.D. La. 2010); Toomer v. Florida Parishes Juvenile Justice Comm'n, 2005 WL 5974570 (E.D. La. 2005). Dr. Kelly's deposition contains nothing more than his legal conclusions based on factual findings presented to him before and during the deposition. (Doc. 90-1). Any conclusions made by Dr. Kelly cannot be the subject of expert testimony because these fall within the province of the fact finder, who is charged with hearing the facts, weighing the reliability and credibility of witnesses and evidence, and deciding the outcome of the case at issue.

**N. Unaddressed Claims**

Both parties failed to address the following claims made in the Complaint for summary judgment:

1.   Unlawful arrest under § 1983 against Fairbanks;

2.   Fourteenth Amendment substantive due process against Fairbanks;

3.   Louisiana Constitution Article I, §§ 2, 5 against Fairbanks; and

4.   Louisiana state law false arrest against Fairbanks. (Doc. 1).

21

Because of the parties' failure to address these claims, we cannot at this time grant summary judgment as to them. However, based on the record presented to us, we have a difficult time finding a basis for Plaintiff's claims. For the present time, we will deny Defendants' motion as to all of the unaddressed claims.

## O. Conclusion

For the reasons detailed above, Defendants' Motions for Summary Judgment (Docs. 77, 79) will be granted in part and denied in part, and Defendants' and Motion to Strike (Doc. 86) will be granted in part and denied in part as set forth in this ruling. A separate and conforming judgment will be signed.

SIGNED on this 23rd day of January, 2013 at Alexandria, Louisiana.


DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT