UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| N.S., IN HER CAPACITY OF NATURAL TUTRIX AND ON BEHALF OF HER MINOR CHILDREN R.G. and N.G. (HEIRS OF RICHARD GOSS) | CIVIL ACTION NO. 09-0779 |
| -vs- | JUDGE DRELL |
| CITY OF ALEXANDRIA, et al. | MAGISTRATE JUDGE KIRK |

---

## RULING

Before the Court is a "Second Motion for Summary Judgment" filed by Defendants Officer Clifton Fairbanks, the City of Alexandria, and former Chief of the Alexandria Police Department Darren Coutee. (Doc. 108). Plaintiffs filed a timely "Memorandum in Opposition to Defendant Fairbanks' Motion for Summary Judgment." (Doc. 112). Defendants filed a timely Reply. (Doc. 113). All responses have been reviewed by the Court, and these matters are ready for disposition. For the following reasons, the Second Motion for Summary Judgment will be **GRANTED**. Because this ruling disposes of all of Plaintiffs' remaining claims, the case will be **DISMISSED with PREJUDICE**.

I. <u>Background</u>

Plaintiff Nikki Mccoy Small[1] is suing the Defendants in her capacity of natural tutrix and on behalf of R.G. and K.G., her minor children. (Doc. 1 at 1–2, 6). Children R.G. and K.G. are the only surviving heirs of their deceased father, Richard Goss. (<u>Id.</u> at 6). Plaintiffs allege Defendant Officer Clifton Fairbanks shot Richard Goss on November 26, 2008, who died as a result. (<u>Id.</u> at 3, 5). Officer Fairbanks was a corporal and patrol officer with the Alexandria Police Department (Docs. 76-7 at 1; 79-6 at 3), and under the supervision of then-Chief of the Alexandria Police Department Darren Coutee (Doc. 77-5 at 1). The facts leading to Richard Goss' death have been explained in detail in the Court's prior summary judgment ruling, and the facts need not be repeated here. (<u>See</u> doc. 98 at 1–5).

Plaintiffs filed this suit on May 12, 2009 against a number of Defendants. (Doc. 1). The Court granted Plaintiffs' motion to voluntarily dismiss Defendants Russell Boney, Joshua Tam, and Acadian Ambulance Service Inc. on July 21, 2009. (Doc. 7). Thus, the only Defendants remaining in the suit are the City of Alexandria, Officer Clifton Fairbanks, and former Chief of the Alexandria Police Department Darren Coutee. After the first Summary Judgment Ruling (Doc. 98) on January 24, 2013, Plaintiffs have the following claims from their complaint remaining:

---

[1] Plaintiffs originally filed their complaint under the name "N.S." (Doc. 1 at 1–2). Defendants moved to dismiss the case for lack of subject matter jurisdiction because this Plaintiff was unnamed. (Docs. 17 at 1; 29-1 at 1). Plaintiffs made a Motion for a Protective Order to proceed under redaction, or, in the alternative to amend complaint to name Plaintiff N.S. under a pseudonym or revealed identity. (Docs. 29; 29-1). Defendants argued it was unnecessary for Plaintiff N.S. to remain anonymous. (Doc. 33 at 1–3). On April 15, 2010, Magistrate Judge Kirk had a telephone conference on the matter and found that there is no compelling reason why this Plaintiff's identity should not be stated, and gave Plaintiffs 14 days to amend their complaint and state the identity of N.S. as a party plaintiff. (Doc. 36). Plaintiffs timely filed their "First Supplemental and Amended Complaint" (Doc. 38) on April 20, 2010.

2

1. Substantive Due Process under the Fourteenth Amendment against Fairbanks

2. Louisiana Constitution Art. I § 5 against Fairbanks

3. Louisiana Constitution Art. I § 2 against Fairbanks

4. Unlawful Arrest under § 1983 and Louisiana state law against Fairbanks

5. Vicarious Liability claims made against the city of Alexandria and Coutee

(Doc. 98 at 21; Doc. 108-4 at 1–2).

## II. Law and Analysis

### A. Motion for Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011)(internal quotations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

### B. Claims Against Officer Fairbanks

#### 1. Fourteenth Amendment - Substantive Due Process

Plaintiffs allege Officer Fairbanks, in his official and individual capacities, used excessive force that would shock the conscious when he shot Mr. Goss in violation of

3

"Goss' clearly established Due Process right to be free of arbitrary and oppressive exercises of government power." (Doc. 1 at 9). The Defendants contend that Plaintiffs' substantive process claim arises from the alleged excessive use of force on Goss. (Doc. 108-4 at 4). Defendants argue that because this Court already determined that the force used on Mr. Goss was not excessive under the Fourth Amendment, we must dismiss Plaintiffs' claim for excessive force under the Fourteenth Amendment. (Id. at 4–5).

The Supreme Court of the United States unequivocally held that regardless of whether an excessive force claim is alleged under the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment, or both; the claim should be analyzed under the Fourth Amendment jurisprudence. Graham v. Connor, 490 U.S. 386, 395 (1989). A number of cases from the Fifth Circuit Court of Appeals and our sister district courts have been consistent with the Supreme Court's prior holding in Graham. See Ikerd v. Blair, 101 F.3d 430, 431, 433 (5th Cir. 1996) (applying Fourth Amendment reasonableness standard to claim alleging excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution); Tarver v. City of Edna, 410 F.3d 745, 749, 751 (5th Cir. 2005)(same); and Young v. Akal, 985 F. Supp. 2d 785, 803–04 (W.D. La. 2013)(same).

Plaintiffs argue that while claims for excessive force must be analyzed under the Fourth Amendment under Graham, "it in no way ruled out Fourteenth [A]mendment analysis regarding conduct that can in no way can be characterized as 'criminal' in the first instance." (Doc. 112 at 2). Plaintiffs "firmly maintain" that Officer Fairbanks lacked probable cause to arrest Goss and treated him as a criminal for non-criminal conduct in

4

violation of his Fourteenth Amendment due process rights. (Id. at 2–3). Plaintiffs claim "[i]t was this initial violation of Goss' Fourteenth Amendment rights that set into motion the subsequent violation of Goss' right to be free from the use of excessive force under the Fourth Amendment." (Id. at 3). This appears to be a new allegation raised for the first time in Plaintiffs' opposition and was not included in Plaintiffs' complaint or amended complaint. Furthermore, Plaintiffs fail to cite any law or case that supports their contention that Officer Fairbanks' alleged treatment of Mr. Goss as a "criminal" is a violation of Goss' right to be free from excessive force under the Fourteenth Amendment. Defendants contend that Officer Fairbanks had a right to approach and speak to Mr. Goss as well as observe his conduct. (Doc. 113 at 2–3). Defendants claims Officer Fairbanks was authorized by Louisiana law to investigate whether Mr. Goss was a harm to himself or others because Officer Fairbanks was responding to a report that Mr. Goss was suicidal. (Id. at 3). Defendants also argue that this issue has already been litigated as the Court previously found that Officer Fairbanks had acted reasonably under the circumstances. (Id.).

While the Plaintiffs attempt to distinguish their claim from the impact of Graham, the only violation of due process under the Fourteenth Amendment alleged in their complaint is for excessive force, and it falls squarely within Graham. 490 U.S. at 395. In the words of Chief Justice Rehnquist: "*all* claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' standard." Id.

5

(emphasis in original). We have already examined Officer Fairbanks' use of force under the reasonableness Fourth Amendment test in depth and that analysis need not be repeated here. (See Doc. 98 at 5–8). Since we have already determined that Officer Fairbanks did not use excessive force and acted reasonably within the meaning of the Fourth Amendment, the Court finds no violation of substantive due process under the Fourteenth Amendment and this claim must be **DISMISSED**.

2. La. Const. Art. I, § 5

Plaintiffs allege Officer Fairbanks violated Mr. Goss' right to be free from unreasonable seizures under Article I, Section 5 of the Louisiana State Constitution. (Doc. 1 at 10–11). Plaintiffs argue that "no reasonable officer could have believed that the unlawful use of deadly force, and violence was consistent with Goss' rights ... secured by Article I, § 5." (Id. at 11). Defendants claim that Plaintiffs' Art. I, § 5 claim is identical to Plaintiffs' excessive use of deadly force claim under the Fourth Amendment and should likewise be dismissed. (Doc. 108-4 at 6). In their Opposition, Plaintiffs allege that although Art. I, § 5 of Louisiana's Constitution is similar to the Fourth Amendment of the Constitution of the United States, the Constitution of Louisiana offers broader protection of the individual than the federal Constitution. (Doc. 112 at 3). Plaintiffs rely on Louisiana Supreme Court case State v. Church and argue that Mr. Goss was "seized" without probable cause or reasonable suspicion in violation of his right to privacy. (Id.). Defendants admit that the Louisiana Constitution does have broader coverage "under certain circumstances" but contend that, in this case, the protections afforded by the

Louisiana Constitution Art. I, § 5 are not broader than those by the federal Fourth Amendment. (Doc. 113 at 4).

The Supreme Court of Louisiana has said that "[b]oth the United States and Louisiana Constitutions prohibit unreasonable searches and seizures." State v. Surtain, 31 So. 3d 1037, 1042 (La. 2010). The analysis required under both of these constitutional principles "must focus on the reasonableness of the governmental action involved." Id. at 1043. The Supreme Court of Louisiana's analysis is heavily grounded in the jurisprudence of the Supreme Court of the United States:

> The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so.

Id. (quoting Sibron v. New York, 392 U.S. 40, 64 (1968)).[2] Our sister court recently found that Art. I, §5 of Louisiana's Constitution was "analogous" to the federal Fourth Amendment proscribing unreasonable searches and seizures in another case alleging a police officer used excessive force. Thomas v. Town of Jonesville, No. 11-408, 2013 WL 265235, *6 (W.D. La. Jan. 23, 2013) (citing Carter v. St. John Baptist Parish Sheriff's Office, No. 11-1401, 2012 WL 1752682, *7 (E.D. La. May 16, 2012)); see also Molette v. City of Alexandria, No. 04-0501, 2007 WL 2174623, *4 n. 10 (W.D. La, Jul. 25, 2007) (dismissing Plaintiff's unreasonable search and seizure claims under the Louisiana constitution because "Louisiana law is nearly identical to federal law with respect to unreasonable search and seizure claims" and the Court already determined that law

---

[2] While this is one example, we note that the Supreme Court of Louisiana relied nearly exclusively on federal Supreme Court case law regarding the Fourth Amendment to the Constitution of the United States to analyze and determine whether a search and seizure was reasonable under both the federal Fourth Amendment and Art. I, Section 5 of the Constitution of Louisiana. See State v. Surtain, 31 So. 3d 1037, 1042–46 (La. 2010).

enforcement did not violate the Plaintiff's Fourth Amendment rights under the federal Constitution).

Plaintiffs' have failed to cite, and this Court has been unable to locate, a single case specifically supporting their contention that Art. I, § 5 of Louisiana's Constitution offers broader protection against unreasonable searches and seizures than the U.S. Constitution's Fourth Amendment. Furthermore, Plaintiffs' reliance on Louisiana Supreme Court case State v. Church, 538 So. 2d 993 (La. 1989) is misplaced, as that case was overruled in 2000 by State v. Jackson, 764 So.2d 64 (La. 2000). Louisiana's highest court, in line with our sister courts, found that Art. I, § 5 of the Louisiana Constitution's protection against unreasonable searches and seizures is akin to that of the Fourth Amendment to the Constitution of the United States. In our prior ruling, we already determined that Officer Fairbanks acted reasonably and did not violate Mr. Goss' Fourth Amendment right to be free from unreasonable seizures, and that analysis need not be duplicated here. (See doc. 98 at 5–8). Therefore, Plaintiffs' unreasonable seizure claim under Art. I, § 5 of the Louisiana Constitution must be **DISMISSED** because the actions of Officer Fairbanks were objectively reasonable under the circumstances in accordance with the Fourth Amendment to the Constitution of the United States.

### 3. La. Const. Art. I § 2

Plaintiffs contend Defendants violated Mr. Goss' due process rights guaranteed by Article I, Section 2 of the Louisiana Constitution. (Doc. 1 at 11). Defendants argue this claim should be dismissed because it is well settled that the due process protections afforded by the Louisiana Constitution are equivalent to the Fourteenth Amendment to the federal Constitution and Plaintiffs' Fourteenth Amendment claims have been

dismissed. (Doc. 108-4 at 9–10). Plaintiffs again argue that the Louisiana Constitution provides greater protection than the Unites States Constitution, relying entirely on Louisiana Supreme Court case State v. Church, 538 So. 2d 993 (La. 1989). (Doc. 112 at 4–5). As discussed *supra*, the State v. Church was overruled by the Louisiana Supreme Court in 2000 by State v. Jackson, 764 So.2d 64 (La. 2000).

We find that Article I, § 2 of the Constitution of the State of the Louisiana does not offer broader protection than the due process clause of the United States Constitution. In the words of the Louisiana Supreme Court, "[u]nlike Louisiana's provision on equal protection which is distinct from that provided in the Fourteenth Amendment, our due process guarantee in La. Const. Art. I, § 2 does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Progressive Security Ins. Co. v. Foster, 711 So. 2d 675, 688 (La. 1998); see also Dupree v. Belton, No. 10-1592, 2013 WL 701068, at *6 (W.D. La. Feb. 26, 2013). Thus, our analysis of Plaintiffs' due process claims under the Fourteenth Amendment to the federal Constitution also applies to the Plaintiffs' due process claim under Article I, § 2 of the Louisiana Constitution. We have already found no violation of Plaintiffs' Fourteenth Amendment due process rights; we also find no violation of Plaintiffs' state law due process rights under Article I, § 2 of the Louisiana Constitution and the claim will be **DISMISSED**.

### 4. Unlawful Arrest under § 1983 and Louisiana State Law

Plaintiffs allege Defendant Fairbanks unreasonably seized and unlawfully arrested decedent Goss in violation of the Fourth Amendment under Section 1983. (Doc. 1 at 8). Plaintiffs also bring a state law claim of false arrest against Defendant Fairbanks with the following allegations:

> Goss was restrained against his will, deprived of his freedom in a significant way, and the detention was without a warrant and without legal authority. Goss did not freely consent to the detention, was not free to relieve himself of the detention. Defendants had no reasonable cause to believe that Goss had committed any offense.

(Doc. 1 at 13, ¶¶ 47–49) (paragraph numbers omitted). It is unclear whether Plaintiffs allege an unlawful arrest in violation of Article I, § 5 of the Louisiana Constitution against unreasonable seizures or the tort of false arrest for their state claim. Defendants contend that Plaintiffs' argument "in support of their unlawful arrest claim is yet another attempt to revisit the previous ruling on use of force." (Doc. 113 at 5). We agree. To support their unlawful arrest claim, Plaintiffs rely on one Supreme Court of Louisiana case, <u>Kyle v. City of New Orleans</u>, 353 So. 2d 969 (La. 1977). (Doc. 112 at 5–6). While the <u>Kyle</u> case does involve a false arrest and imprisonment claim, Plaintiffs only discuss the seven factor test used to determine whether use of force is reasonable in the totality of the circumstances, and fail to address the unlawful arrest claim. (Doc. 112 at 5–6). <u>See also</u> <u>Kyle</u>, 535 So. 2d at 973. However, in an abundance of caution, we address both potential state law claims (the tort of false arrest and unlawful arrest in violation of Article 1, § 5 of the Louisiana Constitution) in addition to the federal § 1983 claim under the Fourth Amendment to the Constitution of the United States and find that all three potential claims may be properly dismissed.

### a. Constitutional Unlawful Arrest

Defendants contend that there was no arrest of Mr. Goss at any moment and the situation was an investigatory stop that quickly escalated into a matter of "self-preservation." (Doc. 108-4 at 11). We are mindful that Louisiana's definition of seizure is slightly broader than the definition for Fourth Amendment purposes. <u>State v. Smith,</u>

28 So. 3d 1162, 1165 (La. App. 4 Cir. 2009) (citing State v. Tucker, 626 So. 2d 707, 712 (La.1993) ("A seizure may also occur when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain to occur.") (internal quotations omitted)). For the sake of argument in the context of this ruling on Defendants' Motion for Summary Judgment, we assume a detention occurred when Officer Fairbanks pulled his firearm and shot Mr. Goss. Given that assumption, the question remains whether this seizure violated Mr. Goss' constitutional rights. The right to be free from unreasonable seizures is guaranteed by the Fourth Amendment to the United States Constitution as well as Article I, § 5 of the Louisiana Constitution. As explained *supra*, whether a seizure is reasonable under the Louisiana Constitution is "analogous" to whether a seizure is reasonable under the federal Constitution. Thomas, 2013 WL 265235, at *6 (citing Carter, 2012 WL 1752682, at *7); see also Molette, 2007 WL 2174623, at *4 n. 10.

In the case at bar, we already examined the facts and found that Officer Fairbanks acted in an objectively reasonable manner in our ruling on the First Motion for Summary Judgment. (See doc. 98). Without duplicating that entire recitation, we will review the keys facts from our ruling constituting the totality of circumstances. Darnell Willis called Acadian Ambulance because Mr. Goss was severely intoxicated. Police backup was called per protocol and Officer Fairbanks was asked to assist with a suicidal subject. On arrival, Officer Fairbanks received consent from Ms. Willis to enter the motel room to investigate whether Mr. Goss was a threat to himself or others because he was reported to be suicidal. Russell Boney, an Acadian Ambulance employee, also entered the motel room with Officer Fairbanks and Mr. Goss was partially clothed, sitting on the bed.

Once in the room, Mr. Boney heard Mr. Goss make a statement about "why you always have to be aware of your surroundings" but was unable to understand Mr. Goss' other statements. Officer Fairbanks heard Mr. Goss make statements including: "stay alert," "stay alive," "big man, huh?" "Double chevron man," "I got mine right here," and "watch your situational awareness." Mr. Boney left the motel room to obtain additional information about Mr. Goss' condition from Ms. Willis. Officer Fairbanks stayed in the room with Mr. Goss because he did not know what was in the room or whether the room was safe. Officer Fairbanks asked Ms. Willis if Mr. Goss had a weapon, and Mr. Goss stated "yeah I've got mine right here." Officer Fairbanks observed Mr. Goss reach his right hand toward the area in between the mattress and boxspring. Officer Fairbanks drew his weapon and commanded Mr. Goss to put his hands up at least four times. During this exchange, Mr. Boney was outside of the motel room and saw Officer Fairbanks' arms extended and heard the commands. Mr. Goss did not comply with the command, and Officer Fairbanks fired his weapon three times. Mr. Goss died as a result of the shots. (Doc. 98).

To determine whether the seizure was reasonable, we must first determine whether Officer Fairbanks lawfully entered the motel room, and if so, whether the seizure was reasonable viewed in the totality of the circumstances.

First, it is well settled that a hotel room, like a home, has heightened privacy rights under the Fourth Amendment. Hoffa v. U.S., 385 U.S. 293, 301 (1966). See also Stoner v. State of Cal., 376 U.S. 483, 490 (1964)("No less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures.") (Internal

citations omitted). Defendants contend Officer Fairbanks was authorized to enter the motel room because he received consent from Ms. Wallis, the other inhabitant of the motel room. (Doc. 108-4 at 11 n. 3 (citing State v. Johnson, 748 So. 2d 527, 531–32 (La. App. 4 Cir. 1999)). Even without explicit consent, Ms. Wallis called an ambulance for assistance and protocol required police backup. Furthermore, an exception to the search warrant requirement in Louisiana allows an officer to enter someone's home to see if the officer reasonably believes they are in need of assistance. See State v. Aicklen, 767 So. 2d 116, 117 (La. App. 4 Cir. 2000) (holding that where a father informed police officers that he believed his son was suicidal and intended to obtain a gun, police were permitted to enter the son's apartment under the "in need of aid" exception). Clearly, in this case, even if Ms. Wallis did not consent, Officer Fairbanks was authorized to enter the motel room without a warrant because, based upon information he already had, he believed Mr. Goss may be suicidal and in need of assistance.

Secondly, as a general matter, a warrantless seizure "is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement." Surtain, 31 So. 3d at 1043. An officer of the law "is not entitled to seize and search every person whom he sees on the street or of whom he make inquiries . . . he must have constitutionally adequate, reasonable grounds for doing so." Id. at 1043. However, a warrantless arrest is reasonable under the Fourth Amendment where a police officer has "probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing United States v. Watson, 423 U.S. 411, 417–24 (1976); Brinegar v. United States, 338 U.S. 160, 175–76 (1949)). To determine whether probable cause exists, one must examine the

"events leading up to the arrest, and then decide whether these historical facts, viewed in the standpoint of an objectively reasonable police officer amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotations and citations omitted).[3]

We have already found that Officer Fairbanks acted reasonably and we decline to re-analyze the reasonableness of Officer Fairbank's actions. Officer Fairbanks made repeated commands for Mr. Goss to put his hands up, and Mr. Goss' reach together with his military and weapon-related statements were sufficient to create a fear of imminent and serious physical harm. Officer Fairbanks had to react quickly in a potentially dangerous situation and it was reasonable for Officer Fairbanks to believe that Mr. Goss was attempting to acquire a weapon. Given these facts, Officer Fairbanks had an objectively reasonable belief that Mr. Goss was attempting to commit a criminal offense, to wit, assault and/or battery, and thus had probable cause to "seize" Mr. Goss.[4] Because Officer Fairbanks had probable cause, the seizure of Mr. Goss did not violate his constitutional right against unreasonable seizures. Thus, Plaintiffs' § 1983 claim for unconstitutional seizure under the Fourth Amendment to the United States Constitution

---

[3] The totality of circumstances that constitute probable cause in the Supreme Court of the United States is consistent with the definition of probable cause in the Fifth Circuit as well as the state of Louisiana. See Hogan v. Cunningham, 722 F.3d 725, 731 (5th Cir. 2013) ("Probable cause justifying an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.") (internal quotations omitted). See also Thomas, 2013 WL 265235, at *5 (citing State v. Bell, 395 So. 2d 805 (La. 1981) ("Probable cause for arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense.")).

[4] Defendants contend Officer Fairbanks had probable cause to believe Mr. Goss was committing one or more of the following offenses: LSA-R.S. 14:34 (aggravated battery); LSA-R.S. 14:34.1 (second degree battery); LSA-R.S. 14:34.2 (battery of a police officer); LSA-R.S. 14:34.7 (aggravated second degree battery); LSA-R.S. 14:35 (simple battery); LSA-R.S. 14:37 (aggravated assault); LSA-R.S. 14:37.2 (aggravated assault upon a peace officer with a firearm); LSA-R.S. 14:37.4 (aggravated assault with a firearm); and LSA-R.S. 14:38 (simple assault). (Doc. 108-4 at 12). The Court finds that Officer Fairbanks reasonably believed that Mr. Goss was committing at least one of these criminal offenses, and had probable cause to detain Mr. Goss, without specifically analyzing each and every potential criminal offense in depth.

as well as Plaintiffs' state law claim under Art. I, § 5 of the Louisiana Constitution will be **DISMISSED**.

### b. Tort of False Arrest

Under Louisiana law, in order to prevail on a tort claim for false arrest, the plaintiff must prove that he was detained and such detention was unlawful. Touchton v. Kroger, Co., 512 So. 2d 520, 524 (La. App. 3 Cir. 1987). An arrest is lawful if the arrest is supported by probable cause and unlawful if the arresting officer lacked probable cause. Deville v. Marcantel, 567 F.3d 156, 165 (5th Cir. 2009) (citing State v. Lindsay, 388 So. 2d 781, 782 (La. 1980)). Since we have already determined that the arrest was lawful because Officer Fairbanks had probable cause, Plaintiffs' tort claim is without merit. Therefore, Plaintiffs' false arrest state tort claim necessarily fails and will be **DISMISSED**.

### C. Claims Against Defendants City of Alexandria and Chief Coutee

#### 1. Vicarious Liability

Plaintiffs allege that Defendants City of Alexandria and Chief Coutee should be held vicariously liable for the actions of Defendant Officer Fairbanks pursuant to Louisiana Civil Code Article 2320. (Doc. 1 at 18). To hold an employer vicariously liable, there must be a claim against a culpable employee. However, because all claims against Officer Fairbanks have been dismissed and there is no cognizable claim against him, Plaintiffs cannot assert any vicarious liability claims against the City of Alexandria or Chief Coutee. Thus, Plaintiffs' vicarious liability claim must all be **DISMISSED**.

### III. Conclusion

For the reasons detailed above, Defendants' Second Motion for Summary Judgment (Doc. 108) will be **GRANTED** as set forth in this ruling. All remaining claims

have been **DISMISSED**, and the case will be **DISMISSED with PREJUDICE**. Disposition will enter by a separate judgment.

SIGNED on this 28 day of August, 2014 at Alexandria, Louisiana.

_____
DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT